**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STUART SIEGAL ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | |
| MIDLAND FUNDING, LLC ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT AND JURY TRIAL DEMAND

## PARTIES

1.  The Plaintiff, Stuart Siegal ("Siegal") is an individual who resides at 242 West Main Street, Westborough, Worcester County, Massachusetts 01581.

2.  The Defendant, Midland Funding, LLC ("Midland Funding") is a limited liability company organized under the laws of the state of Delaware.

3.  Midland Funding has a principal office located at 3111 Camino Del Rio North, Suite 1300, San Diego, California 92108.

4.  Midland Funding transacts business in the Commonwealth of Massachusetts.

5.  Midland Funding's Resident Agent for service of process in the Commonwealth of Massachusetts is Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

## JURISDICTION AND VENUE

6.  Jurisdiction is proper pursuant to 28 U.S.C. §1331 (Federal question), 15 U.S.C. §1681 *et seq.* (Fair Credit Reporting Act), and 15 U.S.C. §1692 *et seq.* (Fair Debt Collection Practices Act).

7.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b)(2), (c), and (d). Venue lies in the Central District of Massachusetts at Worcester as the claims arose from acts of Midland Funding perpetrated therein.

## FACTS

8.     This is a Complaint for money damages.

9.     In late 2010, Midland Funding instituted a civil action against Siegal in the Commonwealth of Massachusetts, Small Claims Division of the District Court Department, Westborough Division, entitled Midland Funding LLC v. Siegal, Civil Action No. 201067SC000765 ("Lawsuit").

10.    The attorney for Midland Funding listed on the Complaint for the Lawsuit was Richard S. Daniels, Jr., Daniels Law Office, P.C., 1250 Hancock Street, P.O. Box 699241, Quincy, Massachusetts.

11.    On December 1, 2010, Midland Funding, through its attorney, accepted Siegal's offer of $952.60 as full settlement on Siegal's Midland Funding debt. A true and accurate copy of Midland Funding's letter of acceptance, dated December 1, 2010, is attached hereto as Exhibit "1."

12.    On December 24, 2010, Siegal tendered full payment via personal check no. 368 in the amount of $952.60 to Daniels Law Office P.C. A true and accurate copy of Siegal's check no 368 (with the account number redacted), marked "Payment in Full," is attached hereto as Exhibit "2."

13.    On December 31, 2010 Daniels Law Office P.C. reported in writing to the District Court Department Westborough Division that the Lawsuit had been settled. A true and accurate copy of Daniels Law Offices' letter to the Clerk of the Commonwealth of Massachusetts, Small Claims Division of the District Court Department, Westborough Division, is attached hereto as Exhibit "3."

14.    On January 7, 2011, Daniels Law Office P.C. confirmed in writing to Siegal that payment had been received, and that the lawsuit had been settled. A copy of Daniels Law Offices' January 7, 2011 letter to Siegal is attached hereto as Exhibit "4."

15.    On February 9, 2011, Siegal was notified in writing by Midland Funding's new attorney, The Law Office of Howard Lee Schiff, P.C., that Siegal owed $654.78 on his Midland Funding debt. A true and accurate copy of the February 9, 2011 letter from the Law Offices of Howard Lee Schiff, P.C. is attached hereto as Exhibit "5."

16.    On February 14, 2011, Siegal responded in writing via certified mail, to the Law Offices of Howard Lee Schiff, informing them that this matter had been settled in full. Siegal provided all necessary documentation, including a copy of the cancelled check of

payment in full, as well as the acknowledgement from Daniels Law Office that the matter had been settled in full.  A true and accurate copy of Siegal's February 14, 2011 correspondence to The Law Office of Howard Lee Schiff, P.C. is attached hereto as Exhibit "6."

17.    In December, 2013, Siegal began preparing to obtain a new car loan.  Siegal obtained copies of his Consumer Report from the three major consumer reporting agencies: Equifax, Experian, and TransUnion (collectively, "Consumer Reporting Agencies").

18.    Upon reviewing his Consumer Reports, Siegal discovered that Midland Funding was reporting that Account No. 8531728041 as being in collection, with a balance of $668.

19.    Upon information and belief, Midland Funding reported to the Consumer Reporting Agencies that a balance remained on Account No. 8531728041 and that this account was in collection, for a period of 36 months, from January, 2011 to January, 2014.

20.    On December 21, 2013, Siegal opened disputes with each of the Consumer Reporting Agencies, providing written documentation that the matter had been settled in full.  A true and accurate copy of Siegal's correspondence with each of the three Consumer Reporting Agencies is attached hereto as Exhibit "7."

21.    Upon information and belief, after receipt of Siegal's dispute, each of the Consumer Reporting Agencies then contacted Midland Funding and notified Midland Funding of Siegal's dispute.

22.    In each instance Midland Funding confirmed to the Consumer Reporting Agencies that Account No. 8531728041 had an outstanding balance of $668 and that the account was in collection.

23.    The Consumer Reporting Agencies informed Siegal, by letter dated January 14, 2014, and by email, that Midland Funding had confirmed a balance of $668 on this account, and that the account was in collection.  A true and accurate copy of the portions of TransUnion's letter to Siegal relating to Midland Funding, LLC, dated January 14, 2014, is attached hereto as Exhibit "8."

24.    The false information remained on Siegal's Consumer Report.

25.    In December of 2013, Siegal was denied auto financing by Bank of America, TD Bank, and DCU Credit Union.  Each of these lending institutions cited past due collection accounts as a reason for declining the loan request.

26.    In order to obtain auto financing, Siegal was forced to sell $7,000 in NCR and Teradata stock to decrease the amount of his auto loan.  This stock was his only liquid asset.

27.    Siegal eventually obtained auto financing at an annual percentage rate ("APR") of 5.01%.

28.     In December, 2013, consumers with good credit were obtaining auto financing at as little as 0% APR. In December, 2013, consumers with fair credit were obtaining auto financing at 4.22%.

29.     On January 14, 2014, Siegal contacted Midland Funding and spoke with Michelle Johnson. Ms. Johnson reported seeing the error regarding Account No. 8531728041. She stated that she could see that the account was settled in full, but that a balance still existed. She stated that she could not, however, correct this error. At that time, Siegal requested to speak with a supervisor.

30.     After 25 minutes on hold, Siegal then spoke with Ms. Rebecca Sanchez at Midland Funding. Ms. Sanchez confirmed the error, but reaffirmed that she was unable to correct the error. Ms. Sanchez informed Siegal that Midland Funding's Outsourced Legal Department needed to research this further. When Siegal requested to speak with them, Ms. Sanchez told Siegal that she was unable to reach this department within her own company by either telephone or email. Ms. Sanchez also told Siegal that, to rectify this matter, Siegal would need to fax Midland Funding LLC all supporting documentation that this matter had been settled in full.

31.     Siegal replied that this documentation originated with Midland Funding's attorneys; however, Ms. Sanchez reasserted that this is what Siegal needed to do to initiate an investigation by Midland Funding's Outsourced Legal Department.

32.     On January 14, 2014, Siegal faxed Midland Funding documents from their own attorneys stating that Account No. 8531728041 had been settled in full.

33.     On or about January 21, 2014, Siegal received a letter from Midland Credit Management Inc., dated January 16, 2014, acknowledging that this matter had been settled in full on January 13, 2011. A true and accurate copy of Midland Credit Management's January 16, 2014 letter to Siegal is attached hereto as Exhibit "9."

34.     Upon information and belief, Midland Funding falsely reported Account No. 8531728041 as being in collections and having an outstanding balance to the Consumer Reporting Agencies, monthly from January of 2011 to January of 2014.

35.     Upon information and belief, Midland Funding submitted a total of 108 false reports to the Consumer Reporting Agencies.

## COUNT I
### (Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.)
*Duty to Provide Accurate Information*

36.     Siegal repeats and realleges Paragraphs 1 through 35 as if fully stated herein.

37. Siegal is a "consumer" as defined in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681a(c).

38. Midland Funding is a "person" as defined in the FCRA, which defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency or other entity." 15 U.S.C. §1681a(b).

39. Midland Funding is s "furnisher of information to Consumer Reporting Agencies," under the meaning of the FCRA.  15 U.S.C. §1681s-2.

40. Equifax, Experian, and TransUnion are Consumer Reporting Agencies as defined in the FCRA.  15 U.S.C. §1681a(f).

41. Midland Funding has a duty to provide accurate information to the Consumer Reporting Agencies.  15 U.S.C. §1681s-2.

42. Midland Funding violated its duty to provide accurate information to the Consumer Reporting Agencies and did not provide accurate information to the Consumer Reporting Agencies regarding Siegal and Midland Funding's Account No. 8531728041, from, upon information and belief, January, 2011 to January, 2014.

43. Midland Funding was prohibited from reporting erroneous information to Consumer Reporting Agencies when Midland Funding had actual knowledge of such errors.  15 U.S.C. §1681s-2(a)(1)(A).

44. Midland Funding had actual knowledge that Siegal had settled Account No. 8531728041 in full on December 31, 2010, yet Midland Funding reported erroneous information to Consumer Reporting Agencies, from, upon information and belief, January, 2011 to January, 2014.

45. Midland Funding was prohibited from furnishing any information relating to a consumer to any Consumer Reporting Agency if Midland Funding "kn[ew] or consciously avoid[ed] knowing that the information is inaccurate." 15 U.S.C. §1681s-2(a)(1)(A).

46. Midland Funding knew or consciously avoided knowing that the information it provided to the Consumer Reporting Agencies regarding Siegal was inaccurate.

47. Midland Funding was prohibited from furnishing inaccurate or incomplete information relating to Siegal to any Consumer Reporting Agency after Midland Funding was notified that the information it provided to the Consumer Reporting Agencies was inaccurate.  15 U.S.C. §1681s-2(a)(1)(B).

48. The information Midland Funding to the Consumer Reporting Agencies was, in fact, inaccurate, and, upon information and belief, Midland Funding had reported this inaccurate information from January, 2011 to January, 2014.

49.     Midland Funding continued to report the inaccurate information to the Consumer Reporting Agencies until January, 2014.

WHEREFORE, Siegal respectfully requests that this Count enter judgment against Midland Funding and award Siegal the following damages:

1.      $8,648.53 in actual damages;
2.      $25,000 in punitive damages;
3.      Siegal's costs in pursuing the instant action; and
4.      Any further relief as this Court may deem just and appropriate.


## COUNT II
### (Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.)
### *Duty to Investigate and/or Reinvestigate*

50.     Siegal repeats and realleges Paragraphs 1 through 49 as if fully stated herein.

51.     Siegal notified the Consumer Reporting Agencies of his dispute relating to Midland Funding Account No. 8531728041 on December 21, 2013.

52.     Upon information and belief, the Consumer Reporting Agencies then notified Midland Funding of Siegal's dispute, thereby triggering Midland Funding's obligation to reinvestigate.  15 U.S.C. §1681i.

53.     Midland Funding had a duty, after receiving notice of Siegal's dispute from the Consumer Reporting Agencies, to conduct an investigation and/or reinvestigation with respect to the disputed information, including a review of all relevant information.  15 U.S.C. §1681s-2(b).

54.     Upon information and belief, Midland Funding did not conduct the required investigation and/or reinvestigation and review all relevant information, because, if it had, it would have discovered the letter from its own attorney, dated January 7, 2011, stating that this matter had been settled in full.  See Exhibit 4, *supra*.

55.     Midland Funding did not correct and update the information it provided to the Consumer Reporting Agencies and, in fact, reported to the Consumer Reporting Agencies that Siegal's Midland Funding debt was accurate and valid.  See Exhibit 8, *supra*.

WHEREFORE, Siegal respectfully requests that this Count enter judgment against Midland Funding and award Siegal the following damages:

1.      $8,648.53 in actual damages;
2.      $25,000 in punitive damages;
3.      Siegal's costs in pursuing the instant action; and

4.      Any further relief as this Court may deem just and appropriate.


## COUNT III
### (Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq.)

56.     Siegal repeats and realleges Paragraphs 1 through 55 as if fully stated herein.

57.     Siegal is a "consumer" as defined in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(3).

58.     Midland Funding is a "debt collector" as defined in the FDCPA.  15 U.S.C. §1692a(6).

59.     Midland Funding falsely represented to Equifax, Experian, and TransUnion the amount and/or legal status of Siegal's debt, in violation of the FDCPA.

60.     Midland Funding falsely represented to Equifax, Experian, and TransUnion the amount and/or legal status of Siegal's debt from, upon information and belief, January, 2011 to January, 2014.

61.     Midland Funding frequently and persistently falsely noncomplied with the FDCPA from, upon information and belief, January, 2011 to January, 2014.

62.     Because Midland Funding's own attorney settled Siegal's debt with Midland Funding on January 7, 2011, Midland Funding has acted in bad faith and with the intent to harm Siegal's credit rating and ability to obtain a car loan.

63.     Because Midland Funding's own attorney settled Siegal's debt with Midland Funding on January 7, 2011, Midland Funding has acted in bad faith and with the intent to harm Siegal's ability to obtain a car loan in December, 2013.

64.     Midland Funding falsely represented the amount and/or legal status of Siegal's debt to Siegal, in violation of the FDCPA.

65.     Midland Funding falsely represented the amount and/or legal status of Siegal's debt to Siegal and others, directly and through the Consumer Reporting Agencies, from January 7, 2011 to January, 14, 2014.

WHEREFORE, Siegal respectfully requests that this Count enter judgment against Midland Funding and award Siegal the following damages:

1.      $8,648.53 in actual damages;
2.      $1,000 in additional damages;
3.      Siegal's costs in pursuing the instant action; and
4.      Any further relief as this Court may deem just and appropriate.

**THE PLAINTIFF, STUART SIEGAL, DEMANDS A TRIAL BY JURY ON ALL ISSUES
SO TRIABLE**

The Pro-Se Plaintiff,

STUART SIEGAL

_____, Pro Se

Stuart Siegal
242 West Main Street
Westborough, MA  01581
(617) 922-4771
Email:  stu.siegal@verizon.net

Dated: Sept. 12 2014